IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

INSURANCE COMPANY OF THE WEST                                    PLAINTIFF

V.                                          CIVIL ACTION NO. 1:11CV190-B-S

TRIANGLE MAINTENANCE SERVICE, LLC,
TRIANGLE HOLDINGS, LLC,
SCOTT C. HANNON, AND
AMANDA P. HANNON                                                DEFENDANTS

## **MEMORANDUM OPINION**

Presently before the court is the plaintiff's motion for summary judgment. Upon due consideration of the motion, response, exhibits, and supporting and opposing authority, the court is ready to rule.

### Factual and Procedural Background

The plaintiff, Insurance Company of the West ("ICW"), is a surety company that issues payment and performance bonds and stands as surety for construction contractors. The defendant Triangle Maintenance Service, LLC, a construction contractor, required a payment and performance bond in order to enter into a contract with the Mississippi Department of Transportation ("MDOT"), to perform construction on a median barrier project on U.S. Highway 49 in Harrison County, Mississippi. In obtaining the required bond from ICW, Triangle Maintenance, defendant Triangle Holdings, LLC, and individual indemnitors, defendants Scott and Amanda Hannon, executed a General Indemnity Agreement with ICW on March 24, 2009. Under the agreement, the indemnitors agreed to, inter alia, the following terms:

1.      INDEMNITY. The Undersigned shall exonerate and keep indemnified the Surety against any and all liability for losses and expenses of whatsoever kind or nature, including attorneys fees and costs, by reason of the failure

of the Principal or Indemnitors to perform or comply with the covenants and conditions of this Agreement.

The Surety may pay or compromise any claim, demand, suit, judgment, or expense arising out of the Bonds, and any such payment or compromise made by the Surety in the reasonable belief that it was liable for the amount paid or that it was expedient under all the circumstances to make such payment or compromise, shall be binding upon the Undersigned as a loss or expense covered by this indemnity, whether or not such liability actually existed. An itemized statement of the payment or compromise, sworn to by an officer of the Surety, or the voucher or vouchers or other evidence of the payment or compromise, shall be prima facie evidence of the fact and the amount of the liability of the Undersigned under this Agreement.

* * *

2.    COLLATERAL. If for any reason the Surety believes it may sustain a loss or expense on a bond, Surety may, from time to time, demand, and upon Surety's demand, the Undersigned shall deliver over to Surety, cash or collateral acceptable to Surety as to amount and form, to cover any contingent losses or expenses and any subsequent increase thereof . . . .

After execution of this indemnity agreement, Triangle Maintenance entered into a construction contract with MDOT on October 29, 2009. The bond obtained from ICW named Triangle Maintenance as principal and MDOT as obligee.

ICW subsequently received a claim on the bond from Webster Electric Co., Inc. ("Webster"), an unpaid subcontractor to Triangle Maintenance on the Highway 49 project, in the amount of $63,288.10. After investigation, ICW paid Webster's claim. ICW then demanded that the indemnitors post collateral in connection with the claim. The indemnitors failed to do so.

On June 23, 2011, ICW was served with a complaint filed by Bayou Concrete, LLC ("Bayou"), alleging that it was owed the sum of $85,103.50 for materials supplied to Triangle Maintenance on the project plus interest, attorney's fees, and penalties. ICW settled with Bayou

2

for $103,823.87, with notice provided to the indemnitors, who did not dispute that Bayou was owed the amount.

ICW also asserts that, pursuant to the indemnity agreement, it is entitled to attorney's fees and expenses incurred with its investigation and settlement of the claims on the project, in connection with enforcing the indemnity agreement, and in connection with defending the lawsuit filed by Bayou. ICW asserts that it will continue to incur additional attorney's fees in this action but has, to date, incurred a total of $12,341.00.

ICW filed this action on September 2, 2011, seeking, inter alia, specific performance, contractual indemnity, and reimbursement. ICW subsequently moved for summary judgment as to the liability of Triangle Holdings and Scott and Amanda Hannon, not seeking summary judgment as to Triangle Maintenance because it filed bankruptcy after the instigation of this action. Further, after the filing of the present motion, Triangle Holdings filed bankruptcy, leaving the motion for summary judgment directed only against Scott and Amanda Hannon.

<u>Standard of Review</u>

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine

issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)). Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[T]he issue of fact must be 'genuine.' When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003). Further, self-serving "affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997).

The court must render summary judgment in favor of the moving party if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000). The Supreme Court has cautioned, however, that the ruling court must not encroach upon the functions of the jury. The Court stated in *Reeves* as follows:

> [T]he court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence. The latter functions, along with the drawing of legitimate inferences from the facts, are for the jury, not the court. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.

*Id.* (citations omitted). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

4

<u>Analysis</u>

The indemnity agreement provides: "An itemized statement of the payment or compromise, sworn to by an officer of the Surety, or the voucher or vouchers or other evidence of the payment or compromise, shall be prima facie evidence of the fact and the amount of the liability of the indemnitors." The plaintiff has made the appropriate submissions in this regard in the form of the affidavit of Ray Barrios, Surety Claims Consultant for ICW, accompanied by copies of the checks drawn on ICW's account and made payable to claimants Webster and Bayou.

In response to the plaintiff's motion, the defendants assert that summary judgment is premature and that discovery should be conducted pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. Defendant Amanda Hannon further asserts that she signed the indemnity agreement under duress and as a result of the undue influence of her husband, defendant Scott Hannon, and that she signed based on an alleged "unilateral mistake."

*Rule 56(d)*[1]

Under Rule 56(d), a party may move the court to defer consideration of an opposing party's motion for summary judgment or move the court for additional time to obtain affidavits and declarations or to take discovery if the party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to the motion. Fed. R. Civ. P. 56(d). The party, however, "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Raby v. Livingston*, 600 F.3d 552, 561

---

[1]The defendants have not complied with this court's local rules in bringing this motion. Local Uniform Civil Rule 7(b)(3)(C) provides: "A response to a motion may not include a counter-motion in the same document. Any motion must be an item docketed separately from a response." The court will, however, address the merits of the motion in this instance.

(5th Cir. 2010). "[A] request to stay summary judgment under Rule 56[(d)] must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.* The court may grant summary judgment "[i]f it appears that further discovery will not provide evidence creating a genuine issue of material fact." *Id.*

The defendants in the present case have not met this burden. Instead, they simply make general, conclusory assertions that the plaintiff's motion is premature and that discovery should be taken. Further, this argument appears to be moot, as the discovery deadline has now passed in this case, and the defendants have not moved to amend their response to the plaintiff's motion or to supplement their own Rule 56(d) motion. The court thus presumes that no information was revealed during the discovery process which would alter the complexion of this case. The defendants' Rule 56(d) argument is therefore without merit.

*Duress and Undue Influence*

Amanda Hannon contends that her husband, Scott Hannon, presented her with the signature page of the indemnity agreement and told her to sign it or their company would lose a construction contract. She asserts that because she entered into the agreement under duress and undue influence, the contract is not enforceable against her.

Duress and undue influence are affirmative defenses, and the defendant bears the burden of proof to establish them. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386 (5th Cir. 2009). "An affirmative defense allows the defendant to introduce evidence to establish an independent reason why the plaintiff should not prevail . . . ." *Id.* at 411. "[R]ecognized affirmative defenses

6

to breach of contract such as . . . duress either admit or do not engage the plaintiff's allegations of breach but assert other, independent facts as a basis for negating liability that the defendant must plead and prove."  *Id.*  "Duress and undue influence are difficult defenses to establish." *Lee v. Hunt*, 631 F.2d 1171, 1178 (5th Cir. 1980).

In the present case, Amanda Hannon's argument of duress and undue influence is premised on the conduct of her husband, not on ICW's actions.  It is uncontested that ICW did not attempt to subject Mrs. Hannon to duress or exert undue influence over her.  Assuming arguendo that Mrs. Hannon could prove that she was the victim of her husband's alleged duress and undue influence in signing the document, ICW acted in good faith and should be allowed to enforce the contract since it materially relied upon the fully-executed and notarized agreement and took no part in and had no knowledge of Mr. Hannon's alleged conduct.  "If a party's manifestation of assent is induced by one who is not a party to the transaction, the contract is voidable by the victim unless the other party to the transaction in good faith and without reason to know of the duress either gives value or relies materially on the transaction."  Restatement (Second) of Contracts § 175 (1981).  Although Mr. Hannon, the person accused of inducing "the victim," Mrs. Hannon, to assent, *is* a "party to the transaction," the logic set forth by the Restatement is nonetheless applicable here – the crucial point being that ICW was the "other party" who acted "in good faith and without reason to know of the [alleged] duress" and who gave value and materially relied on the contract.  For these reasons, the court finds no merit to the defendants' argument.

*Unilateral Mistake*

Amanda Hannon also asserts that the indemnity agreement should not be enforced based on unilateral mistake. This argument is simply an extension of the previous argument; that is, Mrs. Hannon contends that in exerting duress and undue influence over her, Scott Hannon presented her with only the signature page of the indemnity agreement and misadvised her about the contents thereof. Mrs. Hannon contends that she was unaware that she was entering into a contract to indemnify ICW.

"It is well settled under Mississippi law that a contracting party is under a legal obligation to read a contract before signing it." *McKenzie Check Advance of Mississippi, LLC v. Hardy*, 866 So. 2d 446, 455 (Miss. 2004). A contracting party who does not read a contract before executing it "will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract." *Godfrey, Bassett & Kuykendall Architects, Ltd., v. Huntington Lumber & Supply Co., Inc.*, 584 So. 2d 1254, 1257 (Miss. 1991). Further, as the plaintiff notes, the fact that Mrs. Hannon's husband told her that her signature was necessary for their business operations and "that if [she] did not sign the paper, the business would lose a project,"[2] coupled with the fact that her signature was notarized belies Mrs. Hannon's assertion that she was unaware of the import of the document. The court is unpersuaded by the defendants' argument.

---

[2]Amanda P. Hannon Aff. ¶ 5.

<u>Conclusion</u>

For the foregoing reasons, the court finds that the plaintiff's motion for summary judgment is well taken and shall be granted. A separate judgment in accord with this opinion shall issue this day in the amount of $179,452.97 which represents the legitimate claims, plus attorney's fees and costs, the plaintiff has proven it has paid in accordance with the terms of the Indemnity Agreement which this court finds fully enforceable.

This, the 27th day of September, 2012.

/s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**